UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-20119-CR-UNGARO/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAVID ZARAGOZA,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION TO SUPPRESS STATEMENTS**

This matter is before the Court on Defendant David Zaragoza's ("Defendant") Motion to Suppress Statements. [D.E. 46].[1] Defendant seeks to suppress his post-arrest statements. An evidentiary hearing was held on this matter on July 23, 2012. Having carefully considered Defendant's motion and the government's response in opposition, and the testimony of the witnesses and the exhibit admitted at the hearing, and being fully advised in the premises, the Court recommends that Defendant's motion to suppress be Denied for the reasons forth below.

*I.    FACTUAL FINDINGS*

Defendant is charged by indictment with one count of conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, a controlled substance, in

---

[1] This matter was referred to the undersigned Magistrate Judge by the Honorable Ursula Ungaro. [D.E. 48].

violation of 21 U.S.C. § 846. The government alleges that he shipped methamphetamine in a Federal Express package from Palm Springs, California to his co-Defendant in Miami, Florida in January 2012.

### A. *Government's Version of the Arrest and Interview of Defendant*

On the morning of April 7, 2012, Detective Mark Montoya, an officer with the Los Angeles Sheriff's Department who is assigned to a federal drug task force, was contacted by a DEA agent in Florida and informed there was an outstanding warrant, issued from this District, for Defendant's arrest. After learning from the DEA agent that Defendant might be in a hotel room in West Hollywood, California, Detective Montoya called the West Hollywood Sheriff's Department and requested that an officer attempt to locate and arrest Defendant.

A deputy sheriff went to the hotel room where Defendant was believed to be located. Defendant identified himself at the door, along with another man whom Defendant said was his life partner. It was approximately 11:00 a.m. Defendant was arrested and transported to the West Hollywood Sheriff's station. In accordance with standard department practice, because the arresting officer did not interview Defendant, he did not advise Defendant of his *Miranda*[2] rights.

Detective Montoya and Lieutenant Michael Colton, a supervising officer with the Los Angeles Sheriff's Department, were the first officers to interview Defendant. They met with him at approximately 2:00 p.m. in an interview room at the station in which Defendant was detained.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

After introducing himself, Detective Montoya told Defendant why he had been arrested and stated that he wanted to ask Defendant questions about the incident. Detective Montoya then read Defendant his *Miranda* rights from a preprinted waiver of rights form that he and other officers in his department routinely utilized. That form reads as follows:

**ADMONITION AND WAIVER OF RIGHTS**

1. You have the right to remain silent. Do you understand?

2. Anything you say may be used against you in court. Do you understand?

3. You have the right to an attorney during questioning. Do you understand?

4. If you cannot afford an attorney, one will be appointed for you, before any questioning. Do you understand?

    (**Note:** If you desire an expressed waiver, ask a (yes) or (no) question, such as, "Do you want to talk about what happened?")

*See* Govt Ex. 1 [D.E. 73-1].[3] Detective Montoya read each of the four rights to Defendant, line by line, pausing after each to ask whether Defendant understood. In each instance, Defendant responded that he understood. Detective Montoya drew a line beside each right and asked Defendant to initial on each line. Detective Montoya and Lieutenant Colton signed at the bottom of the form. The detective did not read the parenthesized "note" at the bottom of the form out loud because it is for the interviewing officer's information only.

---

[3] Detective Montoya did not bring the original waiver form to court but he testified that Government Exhibit 1 was an exact duplicate of the original.

After advising Defendant of his *Miranda* rights, Detective Montoya asked Defendant several questions, including questions related to the Federal Express package with methamphetamine that was shipped from Palm Springs to Miami. Defendant made several incriminating statements,[4] then stated for the first time that he wished to speak with an attorney. At that point, the detective stopped the interview and neither he nor Lieutenant Colton asked any further questions. The interview lasted approximately 30 minutes.

### B.  *Defendant's Version of His Arrest and Interview*

Defendant testified that after opening his hotel room door for a deputy sheriff, the officer threw him to the floor, handcuffed him and his life partner, and refused to explain what was going on or why he was being arrested. The officer eventually released his life partner, then took him (Defendant) to the West Hollywood Sheriff's station where he was held without food and water.

Three hours later, he met with Detective Montoya and Lieutenant Colton and asked why he had been arrested. He also asked that his *Miranda* rights, which he believed should have been read upon arrest, be read to him then. Detective Montoya explained the reason for Defendant's arrest, then read him the rights printed on the waiver form. Although Defendant could not recall whether he read the form himself, he did place his initials beside each of the four rights printed on the waiver form.

---

[4]  For example, Defendant told the officers that the individual who was with him at the time of arrest was not involved in any criminal activity. Defendant also admitted that he sent the Federal Express package but denied knowing that it contained methamphetamine.

The officers then questioned him for the next 45-60 minutes. They ignored two requests for counsel made before the interview began and again after he had answered several questions. His third request for a lawyer resulted in the termination of the interview. Defendant was never told he could speak to a lawyer *prior* to questioning. Based on language on the waiver form, he thought he had to speak with the officers *before* he could talk to a lawyer.

### C. *Motion to Suppress*

Defendant moves to suppress his statements on the ground that he did not knowingly and intelligently waive his *Miranda* rights. He argues that the waiver form was confusing and misleading, pointing in particular to the third right which states, "You have the right to an attorney during questioning[]" and to the "Note" at the bottom of the form. Defendant claims that the form was unclear regarding his right to have an attorney present and to consult with an attorney, and further, that it misled him into thinking he had to ask questions to get an expressed waiver or that he had to talk with the officers before he could have a lawyer.[5]

---

[5] Although Defendant claims that the officers ignored his first two requests for counsel, he has not argued this as a basis for suppression. *See, e.g., Edwards v. Arizona*, 451 U.S. 477, 487 (1981) (holding that a confession obtained after the defendant asked for a lawyer did not constitute a valid waiver of the right to counsel and was inadmissable at trial). The officers' testimony contradicts Defendant on this point. Both Detective Montoya and Lieutenant Colton testified that all questioning ceased once Defendant asked for a lawyer. Detective Montoya specifically stated that Defendant did not ask for an attorney until after he had spoken with the officers for about half an hour, and when he did ask, the interview ended. With regard to the conflict in testimony, we find the officers fully credible and accept their testimony that all questioning stopped as soon as Defendant first invoked his right to counsel.

## II.  ANALYSIS

In *Miranda*, the Supreme Court established certain procedural safeguards that require law enforcement agents to advise criminal suspects of their constitutional rights to remain silent and to counsel before they may initiate custodial interrogation. A suspect must be told "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." 384 U.S. at 479. The suspect must be afforded the opportunity to exercise those rights throughout the interrogation. *Id.* After the *Miranda* warnings are given, and the opportunity to exercise those rights is afforded, the suspect may knowingly and intelligently waive those rights and answer questions or make statements to officers. *Id.* In the absence of such warnings and a waiver, evidence obtained as a result of the interrogation will be inadmissible. *Id.*

No precise formulation of the *Miranda* warnings is mandated. *California v. Prysock*, 453 U.S. 355, 359 (1981) ("This Court has never indicated that the 'rigidity' of *Miranda* extends to the precise formulation of the warnings given a criminal defendant."). To the contrary, "*Miranda* itself indicated that no talismanic incantation was required to satisfy its strictures." *Id.* "The prophylactic *Miranda* warnings are 'not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected.'" *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (citing *Michigan v. Tucker*, 417 U.S. 433, 444 (1974)).  A court considering this issue "need not examine *Miranda* warnings as if

construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.'" *Id.* (citing *Prysock*, 453 U.S. at 361); *see also, United States v. Woods*, __ F.3d __, 2012 WL 2196179, at *6 (11th Cir. 2012) ("The *Miranda* warnings need not be perfect; rather, the warnings need only 'reasonably convey[]' the defendant's rights." (citing *Prysock*, 453 U.S. at 359)). Thus, so long as the warnings given to a suspect adequately meet *Miranda*'s substantive requirements, they are sufficient. *Duckworth*, 492 U.S. at 203.

Here, Defendant contends that he was not provided with a proper *Miranda* warning regarding his right to have an attorney present during the questioning. We disagree with his assertion that the waiver form was confusing and misleading as to this right.

Detective Montoya read each right out loud to Defendant, including the "right to an attorney during questioning." Defendant responded that he understood each right, then signaled his understanding by initialing beside each one. Detective Montoya did not read the "note" at the bottom of the form to Defendant, and Defendant was not asked to nor did he place his initials beside the "note." Even if Defendant read the "note" himself, it is not numbered and is set off from the four *Miranda* rights by parentheses. Looking at the form in its entirety, we find nothing to suggest that Defendant was required to answer questions before he could consult with a lawyer. We conclude that the warnings provided to Defendant satisfied the substantive requirements of *Miranda*.

Once Defendant was properly advised of his *Miranda* rights, he was entitled to knowingly and intelligently waive them and speak with officers without a lawyer being present. A waiver of the right to counsel "must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege[.]" *Edwards*, 451 U.S. at 482. Whether a waiver has occurred depends "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Id.* It is the government's burden to show, by a preponderance of the evidence, that Defendant knowingly and intelligently waived his rights. *Colorado v. Connelly* 479 U.S. 157, 168 (1986).

The government has met its burden here. Detective Montoya read each of the rights on the waiver form to Defendant, who responded that he understood each. Defendant initialed beside each right on the form, again indicating an understanding of those rights and signaling a willingness to waive those rights and speak with the officers. Moreover, as was evident at the hearing, Defendant, who is a college graduate, is intelligent and articulate. Although Defendant had never before been arrested and may not have known the specific contours of each of the *Mirada* warnings, he was aware that officers had to advise him of those rights at some point after arrest. The evidence shows that Defendant was well apprised of his rights and willingly and knowingly chose to forego those rights and speak with the officers.

Moreover, approximately thirty minutes into the interview, when Defendant asked for an attorney, the questioning ceased. Based on the totality of the

circumstances, we find that Defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights. Consequently, his motion to suppress should be denied.

### III. CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge does hereby **RECOMMEND** that Defendant David Zaragoza's Motion to Suppress Statements [D.E. 46] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have until **August 1, 2012** to serve and file written objections, if any, with the Honorable Ursula Ungaro, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 27th day of July, 2012.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge